*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0400P (6th Cir.)
File Name: 01a0400p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

RICHARD E. FOX,
     *Petitioner-Appellant,*

    *v.*

RALPH COYLE, Warden,
     *Respondent-Appellee.*

No. 99-4523

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 97-03301—Patricia A. Gaughan, District Judge.

Argued: August 7, 2001

Decided and Filed: November 14, 2001

Before: NORRIS, SUHRHEINRICH, and MOORE,
Circuit Judges.

————————————

## COUNSEL

**ARGUED:** Richard A. Chesley, JONES, DAY, REAVIS & POGUE, Chicago, Illinois, for Appellant. Henry G. Appel, ATTORNEY GENERAL'S OFFICE OF OHIO, Columbus, Ohio, for Appellee. **ON BRIEF:** Richard A. Chesley, JONES, DAY, REAVIS & POGUE, Chicago, Illinois, for Appellant. Charles L. Wille, Ellen H. Weston, OFFICE OF

1

THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellee.

————————————

## OPINION

————————————

NORRIS, Circuit Judge.  Richard E. Fox ("Fox") appeals from the district court's denial of his petition for a writ of habeas corpus in this Ohio death penalty case.  This court granted a certificate of appealability as to two issues: (i) whether the Ohio courts erred by using a separate crime for which Fox was neither charged nor convicted as an aggravating circumstance in imposing the death penalty; and (ii) whether the Ohio courts erroneously considered the violence and planning of the crime as aggravating factors in imposing the death penalty.  We now **affirm** the district court's denial of Fox's petition for a writ of habeas corpus.

## I.

The facts underlying Fox's conviction and sentence were set out by the Ohio Supreme Court:

> On September 14, 1989, Leslie Keckler applied for a waitress job at a Bowling Green restaurant.  Defendant, Richard E. ("Dick") Fox, worked there as a grill cook.  As Keckler filled out her job application, Fox pointed out Keckler to a coworker and said, "I'd like to have some of that."  At Fox's request, the restaurant manager showed Fox the job application, which included Keckler's telephone number.

> Sometime after September 14, Keckler told her boyfriend, girlfriend, and mother about an exciting restaurant supply job opportunity.  Keckler described the job to her girlfriend and said that she had an interview.  According to Keckler's mother, her daughter was very excited about this "sales route" job, which involved

*Fox*, 69 Ohio St. 3d at 193, 631 N.E.2d at 132.  Fox argues that this is an inaccurate characterization of Ohio law.  We need not reach this argument, however, as our own careful reading of the Ohio Supreme Court's independent reweighing of the aggravating and mitigating circumstances discloses no reliance on the Ritchey incident.  Indeed, the Ohio Supreme Court does not mention the Ritchey incident.  *See Fox*, 69 Ohio St. 3d at 194-95, 631 N.E.2d at 133-34.  The Ohio Supreme Court's independent examination of the aggravating and mitigating circumstances thus cured any error that may have been introduced by the lower state court's reference to the Ritchey incident, *see Clemons*, 494 U.S. at 748-50, and Fox's claim on this point therefore fails.

## III.

The decision of the district court denying Fox's petition for a writ of habeas corpus is **affirmed**.

*State v. Gumm*, 73 Ohio St. 3d 413, 420-21, 653 N.E.2d 253, 262 (1995) (internal citations omitted).  Thus, while the nature and circumstances of the crime may be considered, such factors may not be weighed against the mitigating circumstances, nor may they be included among the aggravating circumstances.  *Gumm*, 73 Ohio St. 3d at 422, 653 N.E.2d at 263.

The Ohio Supreme Court's consideration of the planning and violence of the crime in the present case adheres to the dictates of *Gumm*.  The planning and violence of the crime were neither weighed against the mitigating evidence nor used as aggravating circumstances.  Indeed, the Ohio Supreme Court prefaced its discussion by noting that it found "nothing in the circumstances of the offense to be mitigating," thus indicating that the planning and violence of the crime were used to indicate the absence of mitigating factors rather than the presence of aggravating circumstances.  The Ohio Supreme Court therefore did not consider a factor outside the strict limits of Ohio's statutory death penalty framework.  Under such circumstances no constitutional violation is stated.

### iii)  The Ritchey Incident

The Ohio Supreme Court also rejected Fox's claim that the appellate court had erred when it referenced the Ritchey incident in the process of reweighing the mitigating and aggravating circumstances:

Fox also argues the court of appeals erred in commenting that "Fox purposely used deception to lure two young women into his control."  We find no error even though Fox was not charged with any offense against Ritchey.  The facts of the Ritchey incident were interwoven with the facts and circumstances of the Keckler kidnapping and murder.  Moreover, the Ritchey offense was part of Fox's social history and background and reflected upon his character.

selling supplies such as towels and aprons to local area restaurants.

On the evening of September 26, Keckler went to the Holiday Inn where a job interview for the sales route job was to take place.  Keckler's boyfriend saw her just before she left.  Keckler told him she might be gone for two or three hours while she went over the sales route.  When Keckler did not come home that night, her boyfriend and mother filed a missing persons report with police.  Police found the car Keckler had been driving abandoned at the Woodland Mall.

On September 30, two boys riding bicycles found Keckler's body in a rural drainage ditch.  Keckler was still wearing her new black dress and leather jacket.  However, a clasp on her brassiere was broken, her belt was unbuckled, two dress buttons were missing, and her pantyhose were torn in the crotch.  Aside from a nearby shoe, police found no other evidence at the scene.

Keckler had died as a result of asphyxia from ligature strangulation and multiple stab wounds.  She had been stabbed six times in the back; three stab wounds penetrated her lungs.  Her right wrist had a deep gash, and her face had bruises on her left eye, upper lip, and nose consistent with blunt force injury.  The coroner found no signs of sexual molestation.

The evidence at trial later showed that at the hotel, Keckler had met Fox, who later stabbed her six times, strangled her with a rope, dumped her body into a ditch, and then drove home.  The facts surrounding Keckler's abduction reminded police of an incident several months earlier involving Marla Ritchey and an unknown man who called himself "Jeff Bennett."  In May 1989, Marla Ritchey had applied for a waitress job at a Bowling Green restaurant.  Fox then worked at that restaurant.  Some days later, arrangements were made for Ritchey to go to the Bowling Green Holiday Inn for an 8:00 p.m. "job interview."  At the Holiday Inn, Fox, calling himself

Jeff Bennett, told Ritchey that he worked for Great American Foods, and they needed a local sales representative. Ritchey agreed to accompany "Bennett" in his car that evening to discuss the job.

After driving a distance and parking, Bennett (Fox) told Ritchey he thought her dress was too long. Eventually, Ritchey decided this was a "fake interview" and told Fox she was not interested in the job. Fox then asked what Ritchey would do if someone "pulled a knife" on her and asked her for money, or asked her "to do other things." When Ritchey jumped out of the car, Fox tried to grab her and said "come back, that he wasn't finished with [her] yet." Ritchey immediately reported the May incident to the police and helped them prepare a composite police sketch of Bennett.

Because of the similarity between Keckler's abduction and the earlier Ritchey incident, police circulated an updated composite sketch of "Bennett," the man Ritchey had met. Police thought he might be a suspect in Keckler's abduction. On October 2, an acquaintance of Fox told police that this composite sketch resembled Richard Fox of Tontogany. Police confirmed that Fox matched Ritchey's description of "Bennett," and Fox's car also matched the description of "Bennett's" car.

On October 2, police secured a warrant to search Fox's car and the home where Fox lived with his parents. . . . [O]fficers conducted the search and found some suspicious items, Fox agreed to go voluntarily to the police station, where he waived his *Miranda* rights and agreed to talk further with police. Before Fox was placed under arrest, he admitted that in early May he had worked at a restaurant where Marla Ritchey had applied for a job, that he met Ritchey at the Holiday Inn, and that he took her for a drive and discussed her skirt length.

Fox also admitted he knew Keckler and claimed they had met and talked at the restaurant where he worked and met again a couple of days later. He described his

Under Ohio law the only aggravating circumstances that may be considered by the courts in sentencing are those delineated in Ohio Revised Code § 2929.04(A). The nature and circumstances of the offense are thus to be weighed against the aggravating circumstances and not as aggravating factors themselves. *See* Ohio Rev. Code § 2929.04(B); *see also State v. Davis*, 38 Ohio St. 3d 361, 372, 528 N.E.2d 925, 935-36 (1988) (reversing and remanding when the trial panel considered the "prior calculation and design" of the murder as an aggravating circumstance). It is, however, entirely permissible under Ohio law for courts to consider the nature and circumstances of an offense in determining whether the aggravating factor(s) outweigh the mitigating circumstances. *See State v. Stumpf*, 32 Ohio St. 3d 95, 512 N.E.2d 598, syllabus para. 1 (1987) ("[u]nder R.C. 2929.03(F), a trial court or three-judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors").

In its most recent discussion of this issue, the Ohio Supreme Court explained that

[t]he nature and circumstances of a crime may be "aggravating" in the sense that they are relevant and tend to reinforce the conclusion that a death sentence should be imposed. This does not mean that the facts surrounding a crime can be set forth in the indictment as a specified statutory aggravating circumstance, nor may they be deemed an "aggravating circumstance" in terms of determining death eligibility. Thus, the fact that a particular murder was, for instance, particularly cruel or heinous is relevant to the determination of the appropriateness of actually imposing a death sentence on a death-eligible perpetrator, even though the fact of cruelty or heinousness would not, of itself, be sufficient to bring the crime within the scope of any section of R.C. 2929.04(A), nor could that fact be used to cause the defendant to become death-eligible.

*Fox*, 69 Ohio St. 3d at 193, 631 N.E.2d at 132 (quoting *State v. Stumpf*, 32 Ohio St. 3d 95, 512 N.E.2d 598, syllabus para. 1 (1987)). The Court then went on to reweigh the mitigating and aggravating circumstances, concluding that:

> We find nothing in the circumstances of the offense to be mitigating. Under any reasonable interpretation of the evidence, Fox lured Keckler by careful deception into a situation where he could control or dominate her for his own gratification. For whatever reason, he then brutally stabbed and strangled her and callously dumped her body in a ditch.
>
> . . . .
>
> When the aggravating circumstance is weighed against the mitigating factors, we find the aggravating circumstance of kidnapping outweighs the mitigating factors beyond a reasonable doubt. Although Fox kidnapped Keckler by deception, rather than force, considerable effort and planning apparently went into that kidnapping. Fox lured a vulnerable eighteen-year-old girl to a remote country road. When she rejected his advances, Fox brutally stabbed her. Then he deliberately got a rope out of the trunk and strangled her "just to make sure she was dead." After doing this, he dumped her body in a drainage ditch and drove home.

*Fox*, 69 Ohio St. 3d at 194-95, 631 N.E.2d at 133. The Ohio Supreme Court thus not only approved of the Ohio Court of Appeal's reference to the planning and violence of the crime but also relied upon those same factors in concluding that the aggravating circumstance outweighed the mitigating evidence presented by Fox.

The question presently before us is whether this consideration of the planning and violence of the offense took the Ohio courts outside the carefully delineated boundaries of Ohio's statutory capital punishment scheme. This was a question answered in the negative by the Ohio Supreme Court itself. We find no basis in Ohio law to doubt this conclusion.

encounter with Keckler at the Holiday Inn on September 26 as a date. Later, at the mall, "he saw Leslie and they talked and ended up taking a drive in his car."

Fox said that, after driving for a while, he and Keckler parked, and "things were getting warmed up." However, "then Leslie did not want to participate." She called him "an asshole and started to get out of the car." Fox told detectives, "no one calls me an asshole." Then "he grabbed Leslie by the coat as she was standing up to get out of the car and pulled her back in," and he "pulled the coat up over her head." Fox got a knife out of the glove compartment and "stabbed her in the back 4 or 5 times." Then, he "got the rope out of the trunk 'just to make sure she was dead' [and] strangled her." Police terminated the interview when Fox asked for a lawyer.

During the interview, Fox also described another remote rural location. At that location, police subsequently recovered Keckler's purse, her notebook, a letter she had written, her other shoe, a button from her dress, and a piece of nylon cord. Forensic examination of Fox's car revealed blood on the front passenger seat, door, and window. Samples tested were Keckler's blood type. In Fox's garage, police found a fillet knife and a thin nylon rope; both had blood on them.

A grand jury indicted Fox for kidnapping and aggravated murder with a felony-murder death penalty specification alleging kidnapping. After Fox's motion for a change in venue was overruled by the trial court, Fox waived a jury and tried the case to a three-judge panel.

At the guilt phase, Fox's retained counsel conceded that Fox had killed Keckler but disputed that the evidence established kidnapping. The parties stipulated that Fox had no criminal record. On cross-examination, some witnesses testified to Fox's good character and hard work. Despite his arguments, the three-judge panel convicted Fox as charged.

*State v. Fox*, 69 Ohio St. 3d 183-85, 631 N.E.2d 124, 125-27 (1994). Following his conviction, the mitigation phase of Fox's trial began before the same panel of judges.[1]   After consideration the panel sentenced Fox to death as well as an additional sentence of 10 to 25 years' imprisonment for the kidnapping offense. *State v. Fox*, No. 89-CR-325, Verdict and Sentence at 2-3 (Wood Cty. Ct. June 26, 1990).

Fox's conviction and sentence were affirmed by the Ohio Court of Appeals, *State v. Fox*,  No. 90WD0067, 1992 WL 185671 (Ohio Ct. App. Aug. 7, 1992), and the Ohio Supreme Court.  *State v. Fox*, 69 Ohio St. 3d 183, 631 N.E.2d 124 (1994).  Fox sought certiorari from the United States Supreme Court but his petition was denied.  *Fox v. Ohio*, 513 U.S. 1060 (1994).

Fox then unsuccessfully sought collateral relief from the state courts before filing the present petition for a writ of habeas corpus on May 12, 1998.  The district court denied Fox's petition on November 15, 1999, after concluding that the Ohio courts had not considered any extra-statutory aggravating circumstances and that the Ohio Supreme Court's independent reweighing of the aggravating and mitigating circumstances was therefore not contrary to clearly established federal law. *See Fox v. Coyle*, No. 1:97 CV 3301, at 56 (N.D. Ohio Nov. 15, 1999).  The district court also denied Fox's request for a certificate of appealability as to all issues.  *See id.* at 61.  This court, however, granted a certificate of appealability as to two issues: (i) whether the Ohio courts erred in using a separate alleged crime for which Fox was not tried as an aggravating factor; and (ii) whether the Ohio courts erred in using the violence and planning of

---

[1] Mitigating evidence included the fact that Fox was a good father to his daughter; a solid member of the community; a reliable employee; and a model inmate while imprisoned awaiting trial.  Two defense mental health experts also testified that Fox suffered from a severe personality disorder and that his low self-esteem caused him to adopt a fantasy life.

We now independently consider whether the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt.  The aggravating circumstance Fox was convicted of was committing a murder while committing, attempting, or fleeing immediately after committing or attempting to commit kidnapping. In our review we will consider the nature and circumstances of the offense, the history, character and background of the offender and the mitigating factors pursuant to R.C. 2929.04(B).

. . . .

Fox purposely used deception to lure two young women into his control.  When Marla Ritchey realized that she was the victim of a cruel hoax, she was lucky enough to get away from Fox as he grabbed for her. Leslie Keckler was not so lucky.  When she attempted to get away from Fox, he brutally stabbed and strangled her to death and left her body in a rural ditch.  We therefore find that the aggravating circumstance in this case outweighs the mitigating factors beyond a reasonable doubt.

*Fox*, 1992 WL 185671, at *10, 12.

Upon appeal, the Ohio Supreme Court rejected Fox's contention that the three-judge panel and the appellate court had both improperly considered the planning and violence of the crime as aggravating circumstances:

Nonetheless, the trial court could appropriately refer to the "manner in which [Fox] planned and executed the events" that led to the kidnapping and murder. Kidnapping was the specified statutory aggravating circumstance. Moreover, "[u]nder R.C. 2929.03(F), a . . . three-judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors."

Goode's future dangerousness. Consequently, there is no sound basis for concluding that the procedures followed by the State produced an arbitrary or freakish sentence forbidden by the Eighth Amendment.

*Id*. at 86-87; *see also Clemons v. Mississippi*, 494 U.S. 738, 746-47 (1990) (jury which had considered an improper aggravating factor imposed the death sentence; Mississippi Supreme Court affirmed on the basis of its own reweighing of the aggravating and mitigating circumstances; Supreme Court concluded that it "must reject Clemons' assertion that he had an unqualified liberty interest under the Due Process Clause to have the jury assess the consequence of the invalidation of one of the aggravating circumstances on which it had been instructed").

As *Barclay* and *Goode* make clear, no constitutional claim is stated where a state's highest court either concludes that no extra-statutory factors were considered at the trial level (as in *Goode*) or independently reweighs the aggravating and mitigating circumstances without reference to the extra-statutory factor improperly relied upon by the lower state courts (as in *Barclay*). The critical question in this case is thus whether the Ohio courts considered extra-statutory aggravating factors and, if they did, whether the Ohio Supreme Court cured any error through its own independent re-evaluation of the appropriateness of Fox's death sentence.

*ii) Planning and Violence of the Crime*

In its consideration of the mitigating circumstances present in Fox's case, the three-judge panel "took note of the manner in which [Fox] planned and executed the events that led to the kidnapping and violent murder of the victim." *State v. Fox*, No. 89-CR-325, Op. at 6 (Wood Cty. Ct. July 10, 1990). The Ohio Court of Appeals affirmed the decision of the three-judge panel after independently reweighing the aggravating and mitigating circumstances present in Fox's case. In relevant part, that court stated that:

the crime as aggravating factors. The present appeal followed.

## II.

*A.  Standard of Review*

This court reviews a district court's legal conclusions in a habeas proceeding de novo and its factual findings for clear error. *See Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). Defendant filed his habeas petition on May 12, 1998, meaning that this court's review of the state court's decision is governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997). As amended, 28 U.S.C. § 2254(d) provides as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody  pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has explained the effect of § 2254(d)(1) in the following terms:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under

§ 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied – the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  With these standards in mind, we now turn to Fox's claims.

### B.  Ohio's Statutory Death Penalty Provisions

In common with other states that employ the death penalty, Ohio uses a weighing method to determine whether an individual charged with a capital offense receives the death penalty.  An individual becomes eligible for the death penalty only if one or more of a series of statutory aggravating circumstances "is specified in the indictment . . . and proved beyond a reasonable doubt." OHIO REV. CODE § 2929.04(A). In the present case, Fox was convicted of murder with the capital specification of kidnapping.  *See* OHIO REV. CODE § 2929.04(A)(7). Once an individual has been found guilty of a capital offense, a jury or three-judge panel must determine whether the presence of one or more of the nine statutory aggravating circumstances listed at Ohio Revised Code § 2929.04(A) outweighs the mitigating circumstances presented by the defendant.  The three-judge panel was thus required to "weigh against the aggravating circumstance[]

some other reason to the level of a denial of rights protected by the United States Constitution.

In any event, we do not accept Barclay's premise. Cases . . . indicate that the Florida Supreme Court does not apply its harmless error analysis in an automatic or mechanical fashion, but rather upholds death sentences on the basis of this analysis only when it actually finds that the error is harmless.  There is no reason why the Florida Supreme Court cannot examine the balance struck by the trial judge and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance.

*Id*. at 956-58.

The Supreme Court extended the logic of its *Barclay* decision in *Wainwright v. Goode*, 464 U.S. 78 (1983) (per curiam).  In *Goode*, the petitioner argued that the trial judge had considered his future dangerousness in sentencing him to death and that reliance on such a factor was impermissible under Florida's capital punishment scheme.  *Id*. at 80-82. Unlike in *Barclay*, mitigating evidence had been introduced on behalf of Goode and the trial judge found two mitigating factors to be present.  *Id*. at 80.  The Florida Supreme Court rejected petitioner's argument on the grounds that the trial judge had not considered future dangerousness in imposing the death sentence.  *Id*. at 82.  The Eleventh Circuit concluded otherwise and held that reliance on an extra-statutory aggravating factor violated the Eighth and Fourteenth Amendments and rendered petitioner's sentence of death arbitrary.  The Supreme Court reversed, finding that the Eleventh Circuit had erred when it had substituted its view of the law and the facts for that of the Florida Supreme Court. The Supreme Court went on to note that even if the state trial court had improperly considered the defendant's future dangerousness,

there [wa]s no claim that in conducting its independent reweighing of the aggravating and mitigating circumstances the Florida Supreme Court considered

At sentencing the trial court rejected the jury's recommendation of a sentence of life imprisonment and imposed the death penalty. Amongst the aggravating factors cited by the trial court was the petitioner's criminal record; a factor not listed in the Florida statute governing the aggravating and mitigating circumstances to be considered in the imposition of the death sentence. *Id*. at 944-45. A plurality of the Supreme Court began its analysis by noting that the "the question whether Barclay's sentence must be vacated depends on the function of the finding of aggravating circumstances under Florida law and on the reason why this aggravating circumstance is invalid." *Id*. at 951. The Court continued:

> The trial judge's consideration of Barclay's criminal record as an aggravating circumstance was improper as a matter of state law: that record did not fall within the definition of any statutory aggravating circumstance, and Florida law prohibits consideration of nonstatutory aggravating circumstances. In this case, like in *Zant v. Stephens* . . . nothing in the United States Constitution prohibited the trial court from considering Barclay's criminal record. The trial judge did not consider any constitutionally protected behavior to be an aggravating circumstance. . . .

> The crux of the issue, then, is whether the trial judge's consideration of this improper aggravating circumstance so infects the balancing process created by the Florida statute that it is constitutionally impermissible for the Florida Supreme Court [sic] let the sentence stand.

> . . . .

> . . . [Petitioner's] assertions seem to suggest that the Florida Supreme Court failed to properly apply its own cases in upholding petitioner's death sentence. The obvious answer to this question, as indicated in the previous discussion, is that mere errors of state law are not the concern of this Court . . . unless they rise for

proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors [listing factors such as age, mental disease, and provocation]." OHIO REV. CODE § 2929.04(B).

In weighing the aggravating circumstances against the mitigating factors, the

> court, and the trial jury if the offender was tried by a jury, [1] shall consider . . . any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing or to any factors in mitigation of the imposition of the sentence of death, [2] shall hear testimony and other evidence that is relevant to the nature and circumstances of the aggravating circumstances the offender was found guilty of committing, the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, and any other factors in mitigation of the imposition of the sentence of death, and [3] shall hear the statement, if any, of the offender, and the arguments, if any, of counsel for the defense and prosecution, that are relevant to the penalty that should be imposed on the offender.

OHIO REV. CODE § 2929.03(D)(1). Finally, if the court or three-judge panel imposes the sentence of death, it must specify in a separate opinion the aggravating and mitigating circumstances found to be present as well as "the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors." OHIO REV. CODE § 2929.03(F).[2]

---

[2] Fox makes much of the three judge panel's failure to comply with the dictates of § 2929.03(F), but this was not among the issues this court certified for appeal. Even were the issue before us, it has been definitively decided against Fox, for the Ohio Supreme Court has held that a defendant is not presumptively prejudiced by a trial court's failure to follow the dictates of Ohio Revised Code § 2929.03(F) as independent review at the state appellate level may

## C. Fox's Constitutional Claims

Fox claims that in the process of weighing the aggravating and mitigating circumstances present in his case the three-judge panel improperly considered the planning and violence of the crime. Rather than correcting these errors, Fox further alleges that the state appellate courts compounded them not only by continuing to rely upon the planning and violence of the crime but also by introducing the Ritchey incident into the weighing process. The result, Fox claims, was a constitutionally invalid death sentence.

An examination of the Supreme Court's death penalty jurisprudence indicates that for Fox's claim to succeed he must show that the state courts did consider extra-statutory aggravators; that any errors were not corrected by the state appeals process; and that the consideration of extra-statutory aggravating factors so infected the balancing process as to render the ultimate sentence constitutionally infirm.

### i) Constitutionality of the Consideration of Extra-Statutory Aggravating Factors

A state wishing to authorize capital punishment "has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. Part of a State's responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates 'standardless [sentencing] discretion.'" *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980) (quoting *Gregg v. Georgia*, 428 U.S. 153, 196 n.47 (1976)).

---

cure any error. *State v. Maurer*, 15 Ohio St. 3d 239, 246-47, 473 N.E.2d 768, 777-78 (1984). The United States Supreme Court has endorsed this type of independent review. *See Clemons v. Mississippi*, 494 U.S. 738, 750 (1990) ("We accordingly see nothing in appellate weighing or reweighing of the aggravating and mitigating circumstances that is at odds with contemporary standards of fairness or that is inherently unreliable and likely to result in arbitrary imposition of the death sentence.").

States may fail to meet their responsibility by relying upon constitutionally invalid aggravating circumstances to define those who are to be sentenced to death. *See, e.g., id.* at 428 (rejecting the Georgia Supreme Court's affirmance of a sentence of death in a case in which the sole aggravating circumstance was the finding that the offense was "wantonly vile, horrible and inhuman"; such words were insufficient to serve as a restraint on the "arbitrary and capricious infliction of the death sentence"). A defendant's due process rights may also be infringed upon by a state's failure to adhere to its own sentencing statute. *See Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980) ("Where, however, a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion . . . .").

The present case involves a state's alleged reliance on sentencing factors that, while constitutionally permissible, could not be considered under the state's statutory sentencing scheme since they were not alleged in the indictment and proved beyond a reasonable doubt.[3] In *Barclay v. Florida*, 463 U.S. 939 (1983), the Supreme Court considered an Eighth Amendment claim regarding a trial court's use of an extra-statutory aggravating factor in a weighing state. The petitioner in *Barclay* was sentenced to death for the random, racially motivated killing of a young hitchhiker. *Id.* at 942.

---

[3]Thus, in this case, it is Ohio's capital punishment scheme that prohibits consideration of the nature and circumstances of the crime as aggravating factors, not the federal constitution. *See Tuilaepa v. California*, 512 U.S. 967, 975-76 (1994) (rejecting the claim that California's use of the nature and circumstances of the crime as an aggravating factor at the sentencing stage was unconstitutionally vague; "our capital jurisprudence has established that the sentencer should consider the circumstances of the crime in deciding whether to impose the death penalty").