RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0366p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JOHNNIE BASTON,

          *Petitioner-Appellant,*

    *v.*

MARGARET BAGLEY, Warden,

          *Respondent-Appellee.*

No. 03-4423

>

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 02-00231—James G. Carr, Chief District Judge.

Argued: April 27, 2005

Decided and Filed: August 25, 2005

Before: BOGGS, Chief Judge; and MERRITT and ROGERS, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Kyle E. Timken, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Timothy D. Prichard, ATTORNEY GENERAL'S OFFICE OF OHIO, Columbus, Ohio, for Appellee. **ON BRIEF:** Kyle E. Timken, Pamela Prude-Smithers, OHIO PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Henry G. Appel, ATTORNEY GENERAL'S OFFICE OF OHIO, Columbus, Ohio, for Appellee.

    BOGGS, C. J., delivered the opinion of the court, in which ROGERS, J., joined. MERRITT, J. (pp. 7-9), delivered a separate dissenting opinion.

———————————

## OPINION

———————————

    BOGGS, Chief Judge. Johnnie Baston was sentenced to death for the robbery and murder of Chong Mah. He now appeals from the district court's denial of his petition for a writ of habeas corpus. Baston argues that the sentencing court considered improper aggravating factors and failed to consider the correct mitigating factors when determining whether a sentence of death was appropriate, and that the sentencing court acted with such bias against him that any errors could not be cured by appellate reweighing of the aggravating and mitigating factors. For the reasons stated below, we affirm the denial of Baston's petition.

1

# I

Baston was sentenced to death for the murder of Chong Mah on March 21, 1994, in Toledo, Ohio. He was indicted and convicted on three counts: 1) aggravated murder in violation of Ohio Rev. Code § 2903.01(A), 2) aggravated murder in violation of Ohio Rev. Code § 2903.01(B), and 3) aggravated robbery with a firearm specification in violation of Ohio Rev. Code § 2911.01(A)(1). Baston elected to be tried by a three-judge panel. He was convicted on all counts on February 15, 1995. On February 27, 1995, the panel sentenced Baston to death.

Mah and his wife owned two retail stores in Toledo. On the day of his death, Mah was working at one of their stores, Continental Wigs N' Things. After Mah failed to answer the phone, his wife became concerned. She went to the store around 5:15 in the afternoon. There, she discovered that her husband had been murdered and the store had been robbed. It was later determined that Mah had been shot in the back of the head from a range of two to three inches.

When Baston was arrested, several days after the murder, he was carrying a gun that proved to be the murder weapon. After his arrest, Baston admitted to having participated in the robbery of Mah, but told police that an accomplice named Ray was responsible for the murder. Baston denied having an intention to kill Mah, and claimed that Ray acted without his prior knowledge.

Baston elected to be tried and sentenced by a three-judge panel. At trial, the defense argued that "Ray" was actually Baston's friend David Smith, and that Smith was the shooter. The defense conceded that Baston was involved in the robbery, but argued that he did not know "Ray" would shoot the victim. The prosecution introduced substantial evidence linking Baston to the crime, including his possession of the murder weapon, his possession of stolen merchandise from Wigs N' Things, and witness testimony linking him to the scene of the crime. Baston was convicted of all counts.

In the sentencing phase, the panel considered the evidence produced during the guilt phase, additional testimony, and Baston's unsworn statement of regret made after his arrest. Baston did not request either a presentence investigation or a mental examination. Baston's defense team raised possible statutory mitigating factors, including his youth (Baston was twenty years of age when he committed the crimes), and the possibility that he was not the primary culprit. The court rejected all mitigating factors except youth. The sentencing court noted that Baston had little adult criminal history, but had been committed to the Ohio Youth Commission as a juvenile and that it would be impossible for someone so young to have an extensive adult criminal record. Finally, the court found that Baston acted alone.

The sentencing panel also heard victim-impact testimony. Nineteen letters from friends and two letters from family members were read by at least some member of the panel. The court also heard testimony from family members. Chonggi Mah, the victim's brother, testified at length about the victim's life. Chonggi Mah also referred to Baston as a "cold-blooded murderer" who showed no remorse throughout the trial.[1]

In a written opinion, the court concluded that the aggravating circumstance, aggravated murder while committing an aggravated robbery, outweighed the only mitigating factor, Baston's youth, and imposed a sentence of death. Although the court expressed sympathy for the loss suffered by the victim's family, it made clear in its opinion that its decision was based solely on the

---

[1] Specifically, Chonggi Mah read a prepared statement which began: "Honorable Judges, Mr. Chong Hoon Mah was killed by a cold-blooded murderer." Near the end of his statement, Mah describes the pain of sitting through the trial: "Most painful of all was watching the convict sit through the trial with a blank expression. Not once through the whole thing did he show that he was sorry or show any sadness about what he did to my brother and his family."

fact that the purposeful and vicious nature of the crime overrode the sole mitigating factor of youth. The sentencing court also stated that the focus of its inquiry was on the "nature of the killing and the background of the killer," and that "Chong Mah's innate goodness was not and is not a significant factor in the panel's decision to impose the death penalty." The court discussed the victim's good qualities, but stated that its sentence was based not on the character of the victim, but solely on the nature of the crime. The court was also blunt in its assessment of Baston's character. JA 69-71 (describing the killing as "purposeful," "vicious," and "cowardly," and expressing regret over the "gun-toting, false-macho, selfish, and violent mess Johnnie Baston has made of his life").

The Ohio Court of Appeals affirmed the death sentence after conducting its statutorily mandated independent reweighing of the mitigating and aggravating factors. *State v. Baston*, No. L-95-087, 1997 WL 570896 (Ohio Ct. App. Sep 12, 1997). However, the court also found that the sentencing court erroneously considered the character of the victim, Baston's possible future criminal conduct, and the nature of the crime as aggravating circumstances. While the sentencing court specifically disclaimed consideration of these factors, the appeals court nonetheless found it "troublesome" that the trial court's opinion discussed the character of the victim and the nature of the crime. The appeals court then concluded that the evidence of Baston's involvement was overwhelming: he was seen with the murder weapon before and after the murder; he had merchandise that were taken from the store; he was seen "casing" the store before the robbery; and he confessed his involvement in the robbery to the police. The court found that there was no reasonable doubt that the robbery and murder were planned in advance and little evidence that anyone other than Baston was involved. The court also considered testimony that Baston had an unstable childhood and was viewed favorably by his church youth counselor, his minister, and his family. The court held that the only statutory mitigating circumstance, Baston's youth, was outweighed by the fact that Baston planned the murder, committed the murder during a robbery, and was the principal offender.

The Ohio Supreme Court unanimously affirmed Baston's death sentence. *State v. Baston*, 709 N.E. 2d 128 (Ohio 1999). The court conducted its own reweighing of the aggravating circumstances and mitigating factors. It concluded that the evidence supported the finding that Baston committed aggravated murder while committing aggravated robbery, and that he was the principal offender. The court then weighed that aggravating circumstance against the nature and circumstances of the offense, Baston's history, character, and background, and the statutory mitigation factors. The court found that the nature and circumstances of the offense did not offer mitigating value, that Baston's history, character, and background offered some mitigating weight, and that his youth was also a mitigating factor. Ultimately, the court concluded that the aggravating factor outweighed the mitigating ones, and affirmed the death sentence.

Following the exhaustion of his appeals in the state courts, Baston filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio. The district court denied his petition on September 12, 2003. *Baston* v. *Bagley*, 282 F. Supp. 2d 655 (N.D. Ohio 2003). The court found that the appellate reweighing of the aggravating factors and mitigating circumstances cured any alleged errors by the sentencing court.

## II

A federal court may not grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits by a state court unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)-(2). A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. Under this standard, a state decision is not unreasonable simply because the federal court concludes that the state decision is erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Id.* at 410-12.

## III

The sole claim raised by Baston is that the sentencing court considered improper aggravating factors and failed to consider the correct mitigating factors when determining whether a sentence of death was appropriate, and that the sentencing court acted with such bias against him that any errors could not be cured by appellate reweighing of the aggravating and mitigating factors. Specifically, Baston alleges three errors by the sentencing court: 1) improper consideration of victim-impact evidence, 2) failure to consider Baston's lack of a criminal history as a mitigating circumstance, and 3) improper consideration of the nature and circumstances of the offense. Baston also argues that, collectively, the errors of the trial court constituted bias by the sentencing court and introduced a level of unfairness that could not be cured by reweighing at the appellate level.

We are skeptical that any of these alleged errors present genuine constitutional violations, but we need not and do not reach the merits of these errors because we conclude that the reweighing of aggravating and mitigating factors by the Ohio Court of Appeals and the Ohio Supreme Court cured such errors, if any, by the sentencing court.

## A

In *Clemons v. Mississippi*, 494 U.S. 738 (1990), the Supreme Court held that errors by the sentencing court in weighing aggravating and mitigating factors could be cured by reweighing in the state appellate court. In *Clemons*, the original death sentence was imposed by a jury, but based in part on an aggravating factor that was improperly introduced. The state appellate court reweighed the aggravating and mitigating factors without the improper aggravating factor, and found that the death sentence was appropriate. The Supreme Court affirmed the death sentence, reasoning that:

> The primary concern in the Eighth Amendment context has been that the sentencing decision be based on the facts and circumstances of the defendant, his background, and his crime. In scrutinizing death penalty procedures under the Eighth Amendment, the Court has emphasized the twin objectives of measured consistent application and fairness to the accused. Nothing inherent in the process of appellate reweighing is inconsistent with the pursuit of the foregoing objectives.

> We see no reason to believe that careful appellate weighing of aggravating against mitigating circumstances in cases such as this would not produce measured consistent application of the death penalty or in any way be unfair to the defendant. It is a routine task of appellate courts to decide whether the evidence supports a jury verdict and in capital cases in "weighing" States, to consider whether the evidence is such that the sentencer could have arrived at the death sentence that was imposed. And, as the opinion below indicates, a similar process of weighing aggravating and mitigating evidence is involved in an appellate court's proportionality review. Furthermore, this Court has repeatedly emphasized that meaningful appellate review of death sentences promotes reliability and consistency.

*Id.* at 748-49 (citations and quotation marks omitted).  *See also Cooey v. Coyle*, 289 F.3d 882, 888 (6th Cir. 2002) ("the federal Constitution does not prohibit reweighing or harmless error analysis as a cure for weighing errors . . . .").

This court has already expressly held that reweighing by the Ohio Supreme Court under Ohio Rev. Code § 2929.05(A) satisfies the requirements of *Clemons*.[2]  *Cooey,* 289 F.3d at 888-90.  *Cooey* presented a situation similar to this case: the Ohio Supreme Court reweighed the aggravating and mitigating factors pursuant to § 2929.05(A), and found that the death sentence was appropriate regardless of any alleged errors in weighing by the sentencing court.  We affirmed, finding that the reweighing was thorough and fair, and thus comported with the requirements of *Clemons*.  *Id.* at 891-92.  *See also Fox v. Coyle*, 271 F.3d 658 (6th Cir. 2001) (holding that the Ohio Supreme Court's independent reweighing of the aggravating and mitigating circumstances under § 2929.05(A) cured any weighing error made by a lower court).

**B**

Pursuant to § 2929.05(A), the Ohio Supreme Court independently reexamined the aggravating and mitigating factors in this case and affirmed the sentence of death.  *State v. Baston*, 709 N.E. 2d 128, 138-39 (Ohio 1999).  The court carefully  reviewed the mitigating factors.  *Id.* at 138.  It accorded some mitigating weight to Baston's difficult childhood: he was abused as child and abandoned by his biological parents.  *Ibid.*  It also accorded some mitigating weight to the character testimony about Baston's participation in activities with the Glass City Church of Christ.  *Ibid.*  The court also noted that Baston's relative youth was a mitigating factor.  *Id.* at 139.  Finally, the court concluded that these mitigating factors were outweighed by the sole aggravating factor: "murder during the course of an aggravated robbery."  *Ibid.*[3]

This reweighing by the Ohio Supreme Court satisfied the requirements of *Clemons* and cured the alleged sentencing errors.  The court carefully reviewed all the aggravating and mitigating factors, and it is undisputed that the court considered the proper factors.

Baston argues that the failure to properly consider mitigating factors (such as his relative youth) cannot be cured by reweighing, even after *Clemons*.  He notes that in *Clemons* the sentencing court improperly considered an additional aggravating factor, whereas here the alleged impropriety is failure to consider a mitigating factor.  Baston asserts that this distinction renders *Clemons* inapplicable. This assertion is inconsistent with the reasoning of *Clemons* and is unsupported by any case law.  Weighing aggravating and mitigating factors against each other requires considering both sets of factors.  Thus, there is no reason that an appellate court could properly reweigh after removing an aggravating factor from consideration, but could not do so after adding an additional mitigating factor.  *Clemons*, 494 U.S. at 750 ("We accordingly see nothing in appellate weighing

---

[2]Under Ohio Rev. Code § 2929.05(A), the Ohio appellate courts are required to "independently weigh" the aggravating circumstances against the mitigating factors:

> The court of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, except that they *shall review and independently weigh* all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate.

(emphasis added).

[3]The court also took the final step, required by the state law but not by *Clemons*, by determining that the death sentence was proportional in light of the sentence imposed in similar cases.  *Ibid.*

or reweighing of the *aggravating and mitigating* circumstances that is at odds with contemporary standards of fairness or that is inherently unreliable and likely to result in arbitrary imposition of the death sentence.") (emphasis added).

Baston also argues that the sentencing court was not merely wrong, it was so heavily biased against him that the sentencing process was tainted and could not be repaired by appellate reweighing. Contrary to Baston's assertion, the opinion of the sentencing court is measured in tone, carefully reasoned, and objective. It is only natural that a case involving a ruthless murder and the imposition of a death sentence will lead to some consideration of moral culpability, and some desire on the part of the court to express its sympathy and understanding to the victim's loved ones. Such consideration raises no constitutional concern. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."). The sentencing court's opinion was measured and fair, and showed no sign of favoritism or antagonism.

**IV**

For the foregoing reasons, we AFFIRM the district court's denial of Baston's petition for habeas corpus.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting. The Ohio Supreme Court, acting as a "reviewing" Court, made a constitutional error in this case by imposing a death sentence anew, after "reweighing" the evidence, without clearly taking the requisite responsibility for its actions. As a reviewing Court, it continued to shift part of the responsibility to the trial court. I would hold that an appellate court must take full and complete responsibility for "decreeing death" whenever it substitutes its judgment for the trial court's by such "reweighing." Here, instead of clearly taking responsibility, the Ohio Court viewed itself as merely engaging in appellate review of the trial court's actions.

The Ohio Supreme Court found a series of substantial errors by the trial court in finding and balancing aggravating and mitigating circumstances. The Court itself "reweighed" the circumstances, and the justices themselves then decreed the death penalty. This process of allowing an appellate court to "reweigh" the circumstances in a death case and then itself impose the death penalty anew is the product of a five-four Supreme Court decision fifteen years ago in *Clemons v. Mississippi*, 494 U.S. 738 (1990).[1] That decision allows state appellate judges not just to review death verdicts for legal error, as is normally the case, but also allows the judges themselves to decree the death penalty.

Justice Scalia, in an essay, made the point that "reweighing" appellate judges may not view themselves as merely reviewing the trial court – as being "in 'material cooperation' with someone else" – but are instead fully responsible for the death sentence.

> [T]rial judges and jurors who must themselves determine that the death sentence will be imposed . . . are not merely engaged in "material cooperation" with someone else's action, but are themselves decreeing death on behalf of the state.
>
> *The same is true of appellate judges in those states where they are charged with "reweighing" the mitigating and aggravating factors* and determining de novo whether the death penalty should be imposed: they are themselves decreeing death.

Scalia, *God's Justice and Ours*, 2002 First Things 123 (May 2002): 17-21, 2002 WLNR 10639587 (emphasis added).

*Caldwell v. Mississippi*, 472 U.S. 320 (1985), imposes a general rule of sentencing responsibility similar to Justice Scalia's view of appellate responsibility in reweighing states. The Court ruled that the state, through its prosecutors and judges, may not leave a sentencing body with the impression that it is not fully responsible for the death sentence by shifting part of the responsibility to appellate judges.

---

[1] Although the Supreme Court has ruled that its decision in *Ring v. Arizona*, 536 U.S. 584 (2002), does not apply retroactively, *see Schriro v. Summerlin*, 124 S. Ct. 2519 (2004), and therefore cannot govern the case *sub judice*, it seems very likely that *Ring* has overruled *Clemons*. In *Ring,* the Court held that defendants have a Sixth Amendment right to have a jury, not a judge, find aggravating circumstances in death penalty cases. It is hard to imagine how this principle would not also apply to the reweighing process described in *Clemons*. If a defendant has a right to have a jury find all the facts that make him eligible for the death penalty, he must also have the right to have a jury make the final determination that he actually will be sentenced to death.

> [I]t is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere.
>
>                            * * *
>
> This Court has always premised its capital punishment decisions on the assumption that a capital sentencing jury recognizes the gravity of its task and proceeds with the appropriate awareness of its "truly awesome responsibility."  In this case, the State sought to minimize the jury's sense of responsibility for determining the appropriateness of death.  Because we cannot say that this effort had no effect on the sentencing decision, that decision does not meet the standard of reliability that the Eight Amendment requires.

*Caldwell*, 472 U.S. at 328-29 & 341.  An "appellate court, performing its task *with a presumption of correctness*," would not feel the requisite responsibility because "decreeing death" is "highly subjective" and the sentencer is "making what is largely a moral judgment of the defendant's desert."  *Id.* at 340 n.7 (emphasis added).  All of this language in *Caldwell* remains good law.[2]

This principle (that when an appellate court engages in reweighing it becomes a sentencer and, like any sentencer, must fully recognize its primary responsibility in decreeing death) places a significant burden on appellate courts when they "reweigh" under *Clemons*.  It must be clear from their opinions that they understand and take sole responsibility for the resulting death sentence by knowingly "making what is largely a moral judgment," not by just refusing to set aside the actions of others.  Otherwise, we cannot be sure that the appellate court, as a sentencing body, "recognize[d] the gravity of its task and proceed[ed] with the appropriate awareness of its 'truly awesome responsibility'" and thereby met the requisite "standard of reliability" under the Eighth Amendment.

Here, the Ohio Supreme Court has not met this requirement because it treated the reweighing process as simply a step in appellate review without taking responsibility itself for "decreeing death."  Although the Court purported to conduct an "independent sentence review," pursuant to Ohio law, it refers to the trial court's findings as to aggravating circumstances and ultimately states that it is merely affirming the judgment of the lower court.  Other than invocation of the word "independent," which is drawn directly from the state statute, there is absolutely no indication that the Ohio Supreme Court understands and has accepted the "truly awesome responsibility of decreeing death for a fellow human." *McGautha v. California*, 402 U.S. 183, 208 (1971).  The Ohio Supreme Court is simply reviewing the decision of the lower sentencing court under Ohio Revised Code § 2929.05(A).  Under that statute the Court acts as a "reviewing" Court to:

> review all of the facts and other evidence to determine if the evidence supports the finding of the aggravating circumstances the trial jury or the panel of three judges found the offender guilty of committing, and shall determine whether *the sentencing court* properly weighed the aggravating circumstances the offender was found guilty of committing and the mitigating factors.

(Emphasis added).  This statutory standard of review in Ohio is quite different from acting itself as the "sentencing court" and taking full responsibility for "decreeing death."  The language of our Court's opinion implicitly recognizes that the Ohio Supreme Court looked upon its role not as

---

[2] A majority of the Court, including Justice O'Connor, concurred in these specific sections of the *Caldwell* opinion.  The only part of the *Caldwell* opinion that did not have five votes and has since been modified is Part IV-A, as explained by Justice O'Connor in her concurring opinion in *Romano v. Oklahoma*, 512 U.S. 1 (1994) and referred to in the majority opinion by Chief Justice Rehnquist, *id.* at 8-9.

accepting full responsibility for "decreeing death" but rather as having simply "cured such errors" of the trial court (Opinion, p. 4) in order to allow the lower court's death sentence to stand. This may seem a subtle distinction, at first glance; but, as the *Caldwell* case and Justice Scalia's essay demonstrate, "material cooperation with someone else's action" shifts too much responsibility and renders the appellate judges less than fully accountable for their action. In matters of life and death, this distinction is important.