**Johnnie BASTON, Plaintiff,**

v.

**Margaret BAGLEY, Warden, Defendant.**

**No. 3:02 CV 231.**

United States District Court, N.D. Ohio, Western Division.

Sept. 12, 2003.

Angela M. Greene, David H. Bodiker, Kyle E. Timken, Office of the Public Defender, State of Ohio, Columbus, OH, for Johnnie Baston.

Norman E. Plate, Tara L. Berrien, Office of the Attorney General, State of Ohio, Capital Crimes Section, Columbus, OH, for Margaret Bagley.

### ORDER

CARR, District Judge.

This is a capital habeas corpus case in which the petitioner, convicted of three counts in a capital indictment, and sentenced to death by a three judge panel in the Lucas County, Ohio, Court of Common Pleas, presents four grounds for relief. For the reasons that follow, I conclude that the petition is without merit.

### Background

The Ohio Supreme Court accurately described the facts giving rise to the petitioner's conviction and sentence:

Chong Mah and his wife, Jin–Ju Mah, owned two retail stores in Toledo. Chong Mah managed the couple's downtown store, Continental Wigs N' Things. In addition to wigs, the store sold team logo hats and jackets. At approximately 11:30 a.m. on March 21, 1994, Jin–Ju Mah telephoned her husband and spoke to him at the downtown store. When Chong Mah failed to answer a later call, JinJu Mah became concerned. She then went to the downtown store, arriving around 5:10–5:15 p.m. She found the store unlocked and the lights on. The cash register was open and empty. In a rear storage room, Jin–Ju Mah found her husband's body—he had been shot once through the head. Chong Mah was pronounced dead at the scene.

Investigators found a single .45 caliber hollow-point slug behind the wall paneling in the room where Chong Mah was shot. An autopsy revealed that Chong Mah had been shot in the back of the head at a range of two to three inches. Examination of the crime scene caused investigators to believe that, in addition to the money in the cash register, Chong Mah's killer had also taken team logo hats and "Starter" type jackets from the store.

Also on March 21, 1994, David Smith went to downtown Toledo to meet with his parole officer. Baston accompanied him, but was not permitted to stay for the appointment. Records indicated that Smith met with his parole officer at approximately 11:30 a.m., and that the meeting lasted ten to fifteen minutes. When Smith left the meeting, he tried to find Baston. He "beeped" Baston on his pager, but there was no response. Smith then walked back and forth between the municipal building and the county jail four times, finally finding Baston in the vicinity of the municipal court. Baston and another friend, Bobby Mitchell, were in a yellow Cadillac owned by Smith's cousin, Michael Ridley. Mitchell first saw Baston on March 21, 1994 on River Street. Baston was carrying a dark brown plastic garbage bag that appeared to have something in it. Mitchell passed Baston as Mitchell went to his car, before proceeding to Smith's apartment, where he again saw Baston. Mitchell was there to see Ridley, who was also staying at the apartment.

While Mitchell was at Smith's apartment, he noticed some sports hats lined up on an end table, as well as a revolver. A short time later, Mitchell and Baston left the apartment in Ridley's Cadillac to pick up Smith downtown. When the two picked up Smith in front of the municipal court building, Mitchell was driving, Baston was in the passenger's seat, and Smith got in the back seat. Mitchell overheard Smith and Baston "mumbling" to each other, and heard Baston

tell Smith "I did it." The trio then drove back to Smith's apartment.

After news coverage of Chong Mah's murder, an employee of a nearby club/bar reported to police that at approximately 11:45 a.m. on the day of the murder, she saw a man carrying a plastic bag walk across a parking lot near the wig shop. The man caught her attention because he was heavily dressed despite it being unseasonably warm that day, and he was wearing a team logo jacket, and another jacket draped over his shoulders. She later said the man could have been Baston, but was unable to positively identify him. A patron of the bookstore adjacent to or near the wig shop told police that he thought he heard a gunshot shortly before noon on March 21, 1994.

A few days after the murder, Patricia Chininis contacted the Toledo Police. Patricia Chininis's daughter, Deana, was Smith's girlfriend. Both women also knew Baston. Patricia Chininis related that on the day before the shooting, Baston and Smith were at her house. In moving Baston's jacket, Patricia Chininis noticed it was unusually heavy. She felt the jacket, realized there was a gun in it, and told Baston and Smith never to come back to her house with a gun. Deana Chininis stated she previously saw both Smith and Baston with revolver-type guns and hollow-point bullets. Furthermore, the day or so after the murder Baston offered to give Deana's girlfriend a Starter jacket.

After receiving this information, police obtained a search warrant for Smith's apartment (where Baston was staying). Police seized four sport logo hats and several Starter jackets. A wig store employee identified these articles as being similar to those the store carried. The employee, an AfricanAmerican, also recalled that three weeks prior to the killing three AfricanAmerican males were in the store acting suspiciously. The employee overheard one of the three say to another: "No, it's a sister in here," before they left. The employee identified Baston as one of the three.

Smith, Deana Chininis, and two other persons were at the apartment when police executed the search warrant. While all four went to the police station, only Smith was cooperative. After interviewing Smith, the police obtained an arrest warrant for Baston.

Baston was arrested in Columbus, Ohio, at a church function. He was carrying a .25 caliber semi-automatic pistol and had a .45 caliber semi-automatic revolver in his luggage. The .45 caliber slug recovered at the crime scene matched those test-fired from the .45 caliber revolver seized from Baston. In an interview with Columbus police shortly after his arrest, Baston admitted participating in the robbery of the wig shop, but denied shooting Chong Mah. According to Baston, an accomplice named "Ray" took Chong Mah into the back room and shot him. Baston denied any intention to kill anyone, and claimed that Ray acted without Baston's prior knowledge.

Baston was indicted on two counts of aggravated murder and one count of aggravated robbery with a firearm specification. Each aggravated murder count carried a capital specification pursuant to R.C. 2929.04(A)(7). Baston pleaded not guilty and elected to be tried before a three-judge panel.

Baston contested that he was the principal offender in the aggravated murder. William Nappins, a defense witness, testified that while on his way to an Alcoholics Anonymous meeting at approximately 11:45 a.m. on the morning of the murder, he saw a tall, dark-skinned African–American male emerge

from either the wig store or the book store next to it. The man was dressed in black and carrying a bag. Nappins's description of the man did not match that of Baston.

The defense argued that David Smith was the Ray that Baston had named as the actual triggerman during his Columbus interrogation. The defense asserted that the presence of another gunman at the wig shop robbery created a reasonable doubt as to the capital specifications. The panel nevertheless found appellant guilty on all counts and specifications.

The panel sentenced Baston to death on one of the aggravated murder counts, and to terms of imprisonment for both the aggravated robbery and the gun specification. Although it sustained three of Baston's assignments of error, the court of appeals affirmed Baston's convictions after curing the errors with its independent review.

*State v. Baston,* 85 Ohio St.3d 418, 418–21, 709 N.E.2d 128 (1999).

Following an unsuccessful direct appeal to the state Court of Appeals and the Ohio Supreme Court, petitioner filed a state court post-conviction relief petition. In that petition he asserted two grounds for relief: 1) ineffective assistance of counsel due to the failure of counsel to ensure that the petitioner had adequate assistance from a psychologist; and 2) ineffective assistance of counsel, based on his attorneys' failure to obtain competent psychological assistance. The trial court denied relief, the appellate court affirmed, and the Ohio Supreme Court declined jurisdiction. Thereafter, petitioner filed the instant habeas corpus petition.

The respondent concedes that the petitioner has exhausted his state court remedies.

The petitioner asserts four grounds for relief:

1. Petitioner's Sixth Amendment right to the effective assistance of counsel was violated by the defense psychologist's failure to properly evaluate Mr. Baston, thus the sentencing hearing is infirm under the Sixth, Eighth and Fourteenth Amendments.

2. Petitioner's Sixth Amendment right to the effective assistance of counsel was violated by the defense's failure to reasonably investigate, present and prepare mitigating evidence, thus the sentencing hearing is infirm under the Sixth, Eighth and Fourteenth Amendments.

3. Prosecutorial misconduct deprived Mr. Baston of the right to a fair trial and due process of law as protected by the Sixth, Eighth and Fourteenth Amendments:

 A. The state argued that the panel should ignore the law as set forth by the Ohio Supreme Court.

 B. The state argued that the court should consider uncharged aggravating circumstances.

 C. The state's closing argument urged the panel to consider the nature and circumstances of the murder as an aggravating factor.

4. The trial panel's erroneous consideration of victim-impact statements, consideration of possible future criminal behavior, and improper consideration of the nature and circumstances of the offense deprived Mr. Baston of his right to due process and a fair sentencing proceeding. United States Constitution, Fifth, Sixth, Eighth and Fourteenth Amendments.

■■■ Though a petitioner's habeas corpus claims may have been presented to the state courts for review, consideration of

such claims is barred where the state courts concluded that they are procedurally defaulted: i.e., they were not timely preserved for later review. In such instances, habeas review is barred absent a showing of cause for the default and actual prejudice resulting from the constitutional violation. *E.g., Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Alternatively, the federal habeas court may consider a procedurally defaulted claim if the petitioner is able to show that a fundamental miscarriage of justice will otherwise occur. *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

In Ohio, a defendant must preserve each issue by timely objection in the trial court and presentation of the issue to the Court of Appeals and Ohio Supreme Court. *See, e.g., State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) (failure to object to a jury instruction at trial, as required by Ohio's contemporaneous objection rule, foreclosed appellate review of the instruction absent plain error); *State v. Roberts*, 1 Ohio St.3d 36, 38–39, 437 N.E.2d 598 (1982). Issues not presented at each and every level cannot be considered in a federal habeas corpus petition. *See, e.g., Buell v. Mitchell*, 274 F.3d 337 (6th Cir.2001); *Scott v. Mitchell*, 209 F.3d 854, 865–868 (6th Cir.2000) (Ohio's contemporaneous objection rule constitutes an adequate and independent state ground of decision sufficient to bar federal habeas corpus review, notwithstanding the availability and possible invocation of plain error review); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985) (habeas review barred by default where petitioner presented claim on direct review to the Court of Appeals, but not to the Ohio Supreme Court).

Some issues, such as those that depend on evidence outside the trial record, are timely presented if submitted in a post-conviction relief petition, and thereafter presented for review by the Court of Appeals and Ohio Supreme Court. Issues that could have been presented on direct appeal cannot, however, be the subject of a post-conviction relief petition. *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967).

Ohio's statutory framework for post-conviction relief proceedings allows "one bite" of the apple: successive post-conviction relief petitions are barred unless the petitioner was unavoidably prevented from discovering the facts on which he later seeks to rely in a successive petition, or the United States Supreme Court has, subsequent to the original petition, recognized a new right that is applicable to the petitioner. Even in those circumstances, relief cannot be granted absent a showing that, but for the error, no reasonable fact-finder would have found the petitioner guilty, or, in a death case, subject to a death sentence. O.R.C. § 2953.23.

In light of the foregoing procedural default doctrines, the respondent contends that several of the petitioner's claims are defaulted for various reasons. Among these are that the claims: 1) were never presented to the state courts (Claim III.C. [The state's closing argument urged the panel to consider the nature and circumstances of the murder as an aggravating factor]); 2) were found by the Court of Appeals to have been defaulted due to the petitioner's failure to have made a contemporaneous objection in the trial court (Claim III.A [The state argued that the panel should ignore the law as set forth by the Ohio Supreme Court]) and Claim III.B ([The state argued that the court should consider uncharged aggravating circumstances]); 3) were not presented on direct

appeal to the Ohio Supreme Court (Claim I [Petitioner's Sixth Amendment right to the effective assistance of counsel was violated by the defense psychologist's failure to properly evaluate Mr. Baston, thus the sentencing hearing is infirm under the Sixth, Eighth and Fourteenth Amendments] and Claim II [Petitioner's Sixth Amendment right to the effective assistance of counsel was violated by the defense's failure to reasonably investigate, present and prepare mitigating evidence, thus the sentencing hearing is infirm under the Sixth, Eighth and Fourteenth Amendments]); and 4) go beyond the allegations of petitioner's post-conviction relief petition (Claim I [Petitioner's Sixth Amendment right to the effective assistance of counsel was violated by the defense psychologist's failure to properly evaluate Mr. Baston, thus the sentencing hearing is infirm under the Sixth, Eighth and Fourteenth Amendments] and Claim II [Petitioner's Sixth Amendment right to the effective assistance of counsel was violated by the defense's failure to reasonably investigate, present and prepare mitigating evidence, thus the sentencing hearing is infirm under the Sixth, Eighth and Fourteenth Amendments]).

The respondent's claims of default will be considered with regard to each of the petitioner's claims in the order in which the petitioner asserts those claims.

Finally, the limitation imposed by the Anti–Terrorism and Effective Death Penalty Act (AEDPA) on a federal court's power to grant habeas corpus relief must be kept in mind. Under AEDPA:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## Petitioner's Claims for Relief

### I. Ineffective Assistance of Counsel—Inadequate Expert Assistance

■ Petitioner's first ground for relief contends that his "Sixth Amendment right to effective assistance of counsel was violated by the defense psychologist's failure to properly evaluate Mr. Baston," causing the sentencing hearing to be infirm under the Sixth, Eighth and Fourteenth Amendments. The gravamen of this claim was described in the opinion of the state Court of Appeals affirming the denial of petitioner's post-conviction petition:

defense counsel averred that the defense team hired a clinical, forensic psychologist who tested appellant before trial. The psychologist reported orally to the defense that she should not be called as a witness since " * * * she had nothing good to say about Mr. Baston." Because of this recommendation, defense counsel chose not to present any psychological testimony.

Attached to the petition is a letter from the trial psychologist to the post-conviction psychologist in which the trial psychologist states, "I did not prepare a report on Mr. Baston, if I recall, because my findings would not have been useful to his attorney, and I honestly do not remember if I even scored the tests completely."

The affidavit from the postconviction psychologist details the steps this professional believes constitute "appropriate" services which should be provided a capital defendant.

The final document in support of the petition is the postconviction psychologist's evaluation in which she opines that appellant likely has a learning disability and there exists, "* * * a possibility of * * * an undiagnosed or untreated Bipolar Disorder."

*State v. Baston,* 2000 WL 1713768, *2 (Ohio App. 6 Dist., Nov 17, 2000).

The respondent acknowledges that this claim is not defaulted. (Doc. 13 at 25).

The petitioner is not, however, entitled to relief on this claim, which challenges the competence of the expert appointed at the petitioner's request.

The respondent contends, and I agree, that the petitioner has failed to show that the expert performed incompetently. She conducted several tests; based on the results of those tests, she determined that her testimony would not be useful to the petitioner. The expert retained by the petitioner with regard to his post-conviction petition does not claim that the pretrial examination or its results fell below professional standards. There is, therefore, no evidence in the record that suggests, much less establishes, that the evaluation and conclusions of the pre-trial expert were inaccurate or incompetent.

In any event, even if such showing had been made, the petitioner would not be entitled to relief on his first claim. A defendant is entitled to effective assistance of counsel, not effective assistance of experts. Thus, as the Fourth Circuit pointed out in *Wilson v. Greene,* 155 F.3d 396, 401 (4th Cir.1998), in which a habeas petitioner submitted a report stating that his original expert had not conducted an adequate examination,

The Constitution does not entitle a criminal defendant to the effective assistance of an expert witness. To entertain such claims would immerse federal judges in an endless battle of the experts to determine whether a particular psychiatric examination was appropriate. *See Harris v. Vasquez,* 949 F.2d 1497, 1518 (9th Cir.1990); *Silagy v. Peters,* 905 F.2d 986, 1013 (7th Cir.1990). Furthermore, it would undermine the finality of state criminal convictions, which would constantly be subject to psychiatric reappraisal years after the trial had ended. *Harris,* 949 F.2d at 1517–18; *Silagy,* 905 F.2d at 1013.

There is no merit to petitioner's contention that his counsel failed to provide constitutionally adequate assistance because the defense expert concluded that the results of her examination of the petitioner would not be helpful to the defense.

Petitioner claims that the state appellate court applied the wrong standard to his claim. I disagree in light of the foregoing authority. Thus, the petitioner has not shown that the decision of the state appellate court was contrary to, or an unreasonable application of controlling precedent. He is not, accordingly, entitled to relief on his first claim.

## II. Ineffective Assistance of Counsel— Mitigation Phase

Petitioner's second claim is that his "Sixth Amendment right to the effective assistance of counsel was violated by the defense's failure to reasonably investigate, present and prepare mitigating evidence, thus the sentencing hearing is infirm under the Sixth, Eighth and Fourteenth Amendments."

To the extent that this claim repeats petitioner's second claim in his post-conviction petition, the respondent acknowledges that it is not defaulted. (Doc. 13 at 25). The respondent contends, though, that, to

the extent that this claim goes beyond the scope of the equivalent claim in his post-conviction petition, it cannot be considered on its merits due to the failure to have presented it in that petition.

I agree that the claim as presented in the post-conviction petition was narrower than the claim before this court. In his post-conviction petition, the petitioner alleged that his attorneys rendered constitutionally deficient representation by failing "to recognize and correct the deficient performance of appellant's court appointed psychologist." 2000 WL 1713768 at *1.

▮ Petitioner's Traverse appears to concede the proposition that the contours of his claim in this court must be congruent with the contours of the claim as presented to the state courts. (Doc. 27 at 14) ("Petitioner's Second Claim for Relief in his habeas corpus petition does no more than argue *substantially the same claim* as has been litigated throughout the proceedings."). (Emphasis added). In any event, to the extent that petitioner seeks to assert a broader claim in this court, he cannot do so, absent a showing of cause and prejudice, which has not been made. *E.g., Teague v. Lane,* 489 U.S. 288, 298–99, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Riggins v. McMackin,* 935 F.2d 790, 793 (6th Cir.1991).

Addressing the merits of petitioner's contention in his post-conviction petition that his trial attorneys rendered ineffective assistance by failing to respond to the court-appointed psychologist's conclusion that she could provide nothing helpful to the defense, the state Court of Appeals stated:

> Absent an independent guarantee of effectiveness of a psychologist, the question is whether counsel's failure to detect their psychologist's "incompetence" was 1) so egregious as to constitute an absence of "counsel" as guaranteed by the Sixth Amendment; and, if so, 2) was

appellant prejudiced by this deficiency to the extent that there would be a reasonable probability that a different result would have been obtained.

> Appellant concedes that to some extent counsel was entitled to rely on the expertise of the trial psychologist. It is uncontested that the trial psychologist told defense counsel that the results of her findings relative to the defendant would not be useful. Appellant's post-conviction psychologist obviously disagrees with this advice. However, a careful examination of the material submitted by the postconviction psychologist fails to allege at any point that the trial psychologist was incompetent or even wrong in her assessment.

> In order to show that trial counsel was deficient in believing the trial psychologist, at a minimum, it must be demonstrated that the trial psychologist's performance was substandard. The postconviction psychologist's affidavit was insufficient to establish this.

2000 WL 1713768 at *5.

▮ A previously noted, there is nothing in the record before this court, as there was nothing in the record before the state courts, that established that the pretrial expert's evaluation or assessment fell below the norms of the expert's profession. Even if such showing had been made, it was not constitutionally incumbent on the petitioner's trial counsel to seek out another, possibly more favorable opinion. *Walton v. Angelone,* 321 F.3d 442, 466 (4th Cir.2003) (citation omitted) (an attorney is not "required to shop for a more favorable expert.").

Even if defense counsel had been required to find someone would could have been helpful to the defense, petitioner has failed to show that such an opinion could have been procured. All that the petitioner's post-conviction expert was willing to

say is that there was "the possibility of the existence of an undiagnosed and untreated Bipolar Disorder" and that it "is very likely that Mr. Baston has suffered from an undiagnosed Bipolar Disorder over his lifetime which has interfered with his functioning." (Apx. Vol. IV, at 58, 60). This qualified and tentative assessment does not show that petitioner's mental condition was such that there was a reasonable likelihood that evidence about that condition, as that evidence was or might reasonably have been evaluated by the post-conviction expert, would have affected the outcome at the sentencing phase.

Finally, the petitioner has not shown that the decision of the state appellate court was contrary to, or an unreasonable application of controlling precedent. He is not, accordingly, entitled to relief on his second claim.

### III. Prosecutorial Misconduct

The petitioner's third claim alleges that prosecutorial misconduct during closing argument deprived him of the right to a fair trial and due process of law as protected by the Sixth, Eighth and Fourteenth Amendments. This claim has three aspects; namely that the state argued that the three judge trial court should: 1) ignore the law as set forth by the Ohio Supreme Court; 2) consider uncharged aggravating circumstances; and 3) consider the nature and circumstances of the murder as an aggravating factor.

### A. Argument to Panel to Ignore Controlling Law

The petitioner claims that during the sentencing phase the prosecution violated his right to fundamental fairness by arguing to the three judge panel that it should ignore controlling law by asking the judges not to consider residual doubt of petitioner's role as the shooter of the victim.

As framed by the Ohio Supreme Court, the basis for this claim is:

Baston relied upon the mitigating factor of residual doubt in the penalty phase of his case. During closing argument, the prosecutor remarked: "I have attempted to figure out what residual doubt is. It still isn't very clear to me. And if the residual doubt can be defined in this case, then I suggest to the Court that they allow the Supreme Court to make the determination here as to whether residual doubt exists. I don't see it."

The prosecutor's argument here questioning the validity of residual doubt as a mitigating factor was prescient in that this court later rejected residual doubt as a mitigating factor. *State v. McGuire* (1997), 80 Ohio St.3d 390, 686 N.E.2d 1112, syllabus. But, we respond here only to the narrower argument of defendant that it would be misconduct for a prosecutor to urge a court simply to ignore residual doubt while that factor continued to be recognized in the decisional law.

Baston argues that the prosecutor's remarks urged the panel to disregard its statutory duty to consider residual doubt. Baston's counsel did not object to the prosecutor's statement. And the comments had no effect on the outcome of the trial because contrary to the prosecutor's urging, the panel examined the factor of residual doubt.

85 Ohio St.3d at 427–28, 709 N.E.2d 128.

The respondent contends that this claim is defaulted, because the petitioner's trial counsel did not object to this aspect of the prosecution's argument. Though the claim was asserted on direct appeal, the state Court of Appeals held that it was defaulted. *State v. Baston,* 1997 WL 570896 at *7 (Ohio App.1997). That court also concluded in a peremptory manner that the claim was without merit. *Id.* ("With respect to any untoward statement by the prosecutor during summation, ... the record fails to

affirmatively disclose that any plea to the three-judge panel to adopt any uncharged specification or disregard any controlling law was effective."). The Ohio Supreme Court likewise concluded that this claim was defaulted. 85 Ohio St.3d at 425, 709 N.E.2d 128.

■ The petitioner has not shown cause and prejudice for the default. He is not, accordingly, entitled to relief on this claim. *Wainwright, supra.* The fact that the Ohio Supreme Court reviewed his contention for plain error does not overcome his default. *E.g., Mason v. Mitchell,* 320 F.3d 604, 635 (6th Cir.2003) (" 'Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice.... Moreover, we view a state appellate court's review for plain error as the enforcement of a procedural default.") (*citing Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir.2001)).

The Ohio Supreme Court's plain error review concluded that there was no merit to the petitioner's claim because the panel had "examined the factor of residual doubt." 85 Ohio St.3d at 428, 709 N.E.2d 128. This was a correct interpretation of the record. (Apx.Vol.I, 529, 533).

■ The petitioner contends that the Ohio Supreme Court misapplied the plain error doctrine when it considered whether, but for the error, the outcome would have been different. The Ohio Supreme Court has, however, consistently held that plain error does not exist unless it can be said that but for the error the outcome of the trial clearly would have been different. *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) (syllabus ¶ 2); *see also State v. Issa,* 93 Ohio St.3d 49, 56, 752 N.E.2d 904 (2001) ("Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise.").

■ Petitioner's contention is, in effect, a claim that the Ohio Supreme Court failed properly to apply Ohio's plain error doctrine. That contention, which challenges the state court's application of state law, is not cognizable in a federal habeas corpus proceeding. *See, e.g., Lewis v. Jeffers,* 497 U.S. 764, 782, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Bugh v. Mitchell,* 329 F.3d 496, 511 (6th Cir.2003).

In any event, the petitioner has not shown that the decision of the state courts was contrary to, or an unreasonable application of controlling precedent. He is not, accordingly, entitled to relief on this aspect of his third claim.

**B. Argument to Consider Uncharged Aggravating Circumstances**

■ The petitioner claims that the prosecutor asked the three judge panel to consider an uncharged aggravating circumstance—namely, that the petitioner committed the murder to eliminate a witness. As framed by the Ohio Supreme Court, the basis for this claim is:

Baston was charged with alternative counts of aggravated murder under R.C. 2903.01. Attached to each count was a capital specification that the murder was committed while Baston was committing an aggravated robbery. During the state's closing argument in the penalty phase, the prosecutor argued:

"[A]nd what we have to look at are the aggravating factors that were committed in this case * * *. This was not—this was not any kind of an attempt to do anything but eliminate a witness."

While committing an aggravated murder to escape detection is an aggravating circumstance under R.C. 2929.04(A)(3), that circumstance was not charged in Baston's case. Baston argues that the prosecutor effectively amended the indictment by arguing that

the murder was committed to eliminate a witness. In *State v. Dilley* (1989), 47 Ohio St.3d 20, 546 N.E.2d 937, syllabus, we held that "[t]he state may not amend an indictment pursuant to Crim.R. 7(D) so as to include a specification contained in R.C. 2941.143 without first presenting the specification to the grand jury or following the other alternatives contained in R.C. 2941.143."

The state counters that these comments by the prosecutor did not impermissibly amend the indictment because they were necessary to establish prior calculation and design for the first count of aggravated murder and the capital specification. The state's argument fails for two reasons. First, the prosecutor's remarks were made in the penalty phase, after the aggravated murder had already been established. Second, the state's theory supporting the capital specification was that Baston was the principal offender; therefore, the portion of the R.C. 2929.04(A)(7) specification requiring prior calculation and design was irrelevant. The "killing of a witness" was not a charged aggravating circumstance. The prosecutor should have focused on the statutory factor, which was charged and proven in the trial phase, and not on factors that were not charged. *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 662 N.E.2d 311, paragraph one of the syllabus.

Because Baston's counsel did not object to the prosecutor's comments, we consider only whether these statement's rise to the level of plain error. *State v. White* (1998), 82 Ohio St.3d 16, 22, 693 N.E.2d 772, 778. We do not believe that the prosecutor's comments made a difference in the outcome of the trial. The panel found Baston guilty of only the R.C. 2929.04(A)(7) specification. *See Wogenstahl*, 75 Ohio St.3d at 357, 662 N.E.2d at 322.

Although the trial court panel mentioned the "elimination of a potential witness" in its R.C. 2929.03(F) opinion, the independent appellate reweighing of the aggravating circumstance Baston was found guilty of committing against the mitigating factors presented cures this defect. *See State v. Lott* (1990), 51 Ohio St.3d 160, 170, 555 N.E.2d 293, 304; *State v. Holloway* (1988), 38 Ohio St.3d 239, 242, 527 N.E.2d 831, 835. 85 Ohio St.3d at 426–27, 709 N.E.2d 128.

The respondent contends that this claim is defaulted, because the petitioner's trial counsel did not object to this aspect of the prosecution's argument. Though the claim was asserted on direct appeal, the state Court of Appeals held that it was defaulted. 1997 WL 570896 at *7. That court also concluded in a peremptory manner that the claim was without merit. *Id.* ("With respect to any untoward statement by the prosecutor during summation, . . . the record fails to affirmatively disclose that any plea to the three-judge panel to adopt any uncharged specification or disregard any controlling law was effective."). The Ohio Supreme Court likewise concluded that: 1) this claim was defaulted; and, 2) on the basis of plain error review, was without merit. 85 Ohio St.3d at 425, 709 N.E.2d 128.

The petitioner has not shown cause and prejudice for the default. He is not, accordingly, entitled to relief on this claim. *Wainwright, supra.*

The Ohio Supreme Court's plain error review concluded that there was no merit to the petitioner's claim because the error was cured through independent reweighing as undertaken by the Court of Appeals. *Id.* at 427, 709 N.E.2d 128. *See Baston, supra*, 1997 WL 570896 at *12–14.

As noted with the prior claim, the petitioner's contention that the Ohio Supreme Court misapplied the plain error doctrine

challenges the state court's application of state law. Such challenge is not cognizable in a federal habeas corpus proceeding. *See, e.g., Lewis v. Jeffers,* 497 U.S. 764, 782, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990); *Bugh v. Mitchell,* 329 F.3d 496, 511 (6th Cir.2003).

In any event, the petitioner has not shown that the decision of the state courts was contrary to, or an unreasonable application of controlling precedent. He is not, accordingly, entitled to relief on this aspect of his third claim.

### C. Argument to Consider the Nature and Circumstances of the Murder as an Aggravating Factor

■ The petitioner claims that the state's closing argument improperly urged the panel to consider the nature and circumstances of the murder as an aggravating factor. The gravamen of this contention is that the prosecutor's contention that the killing was undertaken to eliminate a witness, in addition to calling on the court to impose a death sentence on the basis of an uncharged specification, also asked it to do so on the basis on the nature and circumstances of the crime. (Doc. 9 at 13–14).

The respondent contends that this claim is defaulted because the petitioner has never presented it to the state courts for consideration. The petitioner's response to this contention is that this claim should be viewed as encompassed within his claim that the state invited consideration of an uncharged aggravating factor.

I disagree: the requisite congruence between a claim as presented in this court and a claim or claims raised in the state proceedings is not present. Nothing in the submission of the claim in the state reviewing courts would reasonably have alerted those courts to the petitioner's expanded formulation. Because this claim was neither presented to the state courts, much less "fairly" so, *see generally Han-*

*nah v. Conley,* 49 F.3d 1193, 1196 (6th Cir.1995), it cannot be considered on its merits in this court.

In any event, if the claim could be considered on its merits, and if the prosecutor could be found improperly to have asked the three judge panel to consider the nature and circumstances of the killing, any defect in either the argument or the trial court's conclusion was overcome by the independent reweighing undertaken by the Court of Appeals. 1997 WL 570896 at *12–14.

Finally, the petitioner has not shown that the state court's decisions were contrary to, or an unreasonable application of controlling precedent. He is not, accordingly, entitled to relief on this aspect of his third claim.

### IV. Consideration of Improper Factors and Bias During the Sentencing Phase

The petitioner's fourth claim alleges that the trial court erroneously considered: 1) victim-impact statements; 2) possible future criminal behavior; and 3) the nature and circumstances of the offense, thereby depriving him of his right to due process and a fair sentencing proceeding in contravention of the Fifth, Sixth, Eighth and Fourteenth Amendments to United States Constitution.

In conjunction with this claim, the petitioner also contends that the manner in which the three judge panel expressed its reasons for imposing the death penalty denied him due process, and constituted a structural error.

The respondent concedes that these claims are not defaulted, having been presented on direct appeal to the state Court of Appeals and Ohio Supreme Court.

### A. Improper Factors

The Court of Appeals agreed that the three judge panel had considered improper

factors, as petitioner alleges, during the sentencing phase:

> Appellant asserts he was prejudiced by the introduction of victim impact statements into the proceeding, that the panel erroneously speculated on his future criminal behavior and the panel improperly considered factors outside the aggravating circumstance charged and the mitigating factor found. . . .

> Victim impact statements are not *per se* inadmissable during the sentencing phase of a capital trial.*Payne v. Tennessee* (1991), 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720; *State v. Fautenberry* (1995), 72 Ohio St.3d 435, 439, 650 N.E.2d 878. Nevertheless, appellant argues that to allow such statements in this trial would sanction a retroactive application of R.C. Chapter 2930 (eff.10/12/94).

> . . . . In *Fautenberry,* the Supreme Court analyzed the panel's opinion, and, pursuant to *State v. Post, supra,* [(1987) 32 Ohio St.3d 380, 513 N.E.2d 754] concluded that the decision failed to reveal reliance on victim impact evidence. Absent such reliance, the court concluded it must be presumed that the three-judge panel based its decision only on appropriate evidence. *State v. Fautenberry* at 439, 650 N.E.2d 878.

> Troublesome in this case is the fact that even though the three-judge panel in its opinion specifically disclaims reliance on the victim impact statements, it nonetheless expounds at length on its observations of the value of the victim to his family and his community. Such an extended analysis, by its very nature, implies an improper consideration of this material during the decision making process. Moreover, while the court asserts that the victim impact statements played "no role" in the outcome of its deliberations, it also states that, "[v]ictim impact can now be taken into account, to a limited extent, however, and properly

so[,]" and that, " * * * Chong Mah's innate goodness was not and is not a *significant factor* in the. panel's decision to impose the death penalty." (Emphasis added.) These remarks set up an internal conflict in the panel's decision. If the statements played no role, how can they have been "taken into account"? "[N]ot * * * significant * * *" and "no role" are not synonymous terms.

> We must concur with appellant concerning these assignments of error. The internal conflict evident within the panels' decision dispels the presumption of regularity set forth in *State v. Post* and *State v. Fautenberry* and certainly gives rise to the conclusion that the panel improperly considered evidence presented in victim impact testimony. This is error. *See State v. Lott* (1990), 51 Ohio St.3d 160, 171–172, 555 N.E.2d 293. It is also error to speculate on what crimes the defendant may commit in the future, but for his conviction in the present matter. The trial court clearly did just that when it stated that appellant's " * * * adult record was minor in nature, owing in large part, to the fact that he was barely twenty years of age at the commission of this offense." Accordingly, appellant's Assignments of Error Nos. 8, 9, and 10 are found well-taken.

1997 WL 570896 at *9–11 (emphasis in original).

 After finding the foregoing errors, the Court of Appeals also noted that, "[n]otwithstanding our conclusion above, an erroneous consideration in the penalty phase may be cured by the statutorily mandated independent reweighing of the evidence conducted by this court." *Id. (citing State v. Fautenberry,* 72 Ohio St.3d 435, 439, 650 N.E.2d 878 (1995); *State v. Phillips,* 74 Ohio St.3d 72, 102, 656 N.E.2d 643 (1995)).

The Court of Appeals, as noted previously in this opinion, undertook the mandated reweighing. After noting at the outset that it was "statutorily directed to consider" the balance between mitigating and aggravating factors "independent of the trial court's conclusion on the issue," the court continued:

Our job in this case is doubly difficult, as we must disregard the erroneous material considered by the trial court (i.e. appellant's future criminal conduct, the nature of the crime, and the character of the victim) and balance the aggravating circumstance against the mitigating factors without the ability to judge first hand the credibility of the witness. Nevertheless, we will do so.

Appellant was charged with and convicted of both R.C. 2903.01(A), purposely causing the death of another with prior calculation and design, and R.C. 2903.01(B), purposely causing the death of another in the commission of an aggravated robbery. Both counts contained the capital specification found in R.C. 2929.04(A)(7), offense committed during an aggravated robbery and the defendant was the principal offender or committed the murder with prior calculation and design.

Evidence of appellant's involvement is overwhelming. Witnesses placed the murder weapon in his possession the day before and within an hour after the murder. He possessed goods taken from the store during the robbery and was identified as one of three men "casing" the store a few weeks before the murder/robbery. He confessed his involvement in the robbery to the Columbus police. There is no reasonable doubt that the robbery and the murder were planned in advance.

The only possible doubt remaining is that an accomplice named "Ray" was the principal offender. However, other than appellant's confession, the only evidence indicating an accomplice is the testimony concerning the earlier "casing" of the store and the testimony of a witness, on his way to a noon Alcoholics Anonymous meeting, who gave differing accounts as to the time he saw the other individual near the murder scene and could not say for certain whether this man came from the wig shop or not. The trial panel found this witness not credible. Additionally, the man appellant's counsel wished to portray as "Ray", David Smith, according to Smith's testimony and that of his parole officer, was visiting his parole officer during the time the murder occurred.

R.C. 2929.04(B) directs that when an aggravating circumstance contained in Division (A) of the statute is found, the court:

"* * * shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:

"(1) Whether the victim of the offense induced or facilitated it;

"(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

"(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;

"(4) The youth of the offender;

"(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

"(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

"(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

In a mitigation hearing, even though the prosecutor still bears the burden of proving that aggravating factors outweigh mitigating circumstances, the burden of going forward with the evidence in mitigation is the defendant's. R.C. 2929.03(D)(1). In this case we note that appellant did not request a presentence investigation or a psychiatric evaluation.

In mitigation, the parties stipulated that appellant was twenty years old at the time of his crime. Appellant then called appellant's natural father who testified that appellant was born out of wedlock to an unstable mother. The father had little contact with appellant during his early years. The mother was seldom home and left child-rearing responsibility to appellant's maternal grandmother. Appellant was eventually adopted by a paternal aunt who had other children. A step-brother testified that his mother made the decision to adopt appellant because of the abuse appellant received at the hands of his natural parents. The step-brother also testified that appellant did not fit in well with his new found siblings and did not feel part of the family.

Appellant's church youth counselor testified that in his contact with appellant he was polite, soft-spoken and gentle with children. His minister repeated this description, but on cross-examination reported that he had heard rumors that appellant had a different side from that which he observed.

Appellant's adopted mother testified that she believed he had been abused as an infant and offered the opinion that appellant was a, " * * * good young man [who] just got mixed up with the wrong people."

Appellant made an unsworn statement in which he apologized to the victim's family, " * * * for taking part in what happened * * *." He asked forgiveness.

Appellant made no presentation whatsoever with respect to the statutory mitigation factors contained in R.C. 2929.04(B)(1), (2), (3), or (6). Without a presentence investigation, the extent of appellant's juvenile record was not introduced save for trial testimony that he at one point [had] been ordered into the custody of the Ohio Department of Youth Services. His adult record was minor. What we know about appellant's record is insufficient to establish a mitigation circumstance under (B)(5).

Residual doubt as to guilt may be considered as a mitigatory factor under Section (B)(7), *State v. Watson* (1991), 61 Ohio St.3d 1, 17, 572 N.E.2d 97. As we have previously discussed, the only possible, doubt concerns appellant's status as a principle offender. The trial court judged the testimony of the sole witness who might establish a second actor as not credible. As we previously indicated, in this matter, as in the overall weighing of aggravating factors over mitigating circumstances, the trial panel has the advantage over a reviewing court in that it has the opportunity to observe the demeanor of the witnesses and the manner in which testimony is given. *See State v. Swiger* (1966), 5 Ohio St.2d 151, 156, 214 N.E.2d 417. Notwithstanding this disadvantage, we must conclude from the record before us that no residual doubt exists. Similarly, none of the witnesses called in mitiga-

tion established any other mitigatory circumstance which might be considered under R.C. 2929.04(B)(7).

What is left is an aggravating factor that shows appellant both planned and was the principal actor in a calculated robbery and likewise calculated murder balanced against the sole mitigating factor of appellant's relative youth. We conclude that the aggravating factor simply outweighs the mitigating circumstances beyond a reasonable doubt.

1997 WL 570896 at *11–14.

The respondent contends, and I agree, as I have with regard to other claims based on possible consideration of improper factors during the sentencing phase, that the Court of Appeals' comprehensive reweighing cured any deficiency in the process at the trial level.

In any event, the petitioner has not met his burden of showing that the state court's decisions were contrary to, or an unreasonable application of controlling precedent. He is not, accordingly, entitled to relief on this aspect of his fourth claim.

### B. Bias on the Part of the Trial Panel and Other Due Process Allegations

 The petitioner claims that bias on the part of the trial court constituted structural error and irredeemably tainted and precluded any effort at fair and constitutionally acceptable reweighing of the mitigating and aggravating factors.

The Ohio Supreme Court rejected petitioner's allegations of bias on the part of the trial court:

Baston cites excerpts from the opinion as demonstrative of the court's bias. The court wrote that the victim was "a man of uncommon accomplishment, courage, enterprise and decency * * * [and] a good husband, kind father, close brother, and warm friend." The panel stated that appellant's "adult [criminal] record was minor in nature, owing large

part to the fact that he was barely twenty years of age at the commission of this offense." And Baston cites the court's reference to him as a "gun-toting, false-macho, selfish and violent mess."

When read in the context of the entire opinion, we do not find that the portions cited exhibit bias. The opinion, as a whole, belies that the panel "display[ed] a deep-seated favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States* (1994), 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474, 491. To the contrary, the panel expressly stated that it engaged in a "dispassionate review." We will not presume that the trial court acted with bias. To the contrary, even without an affirmative declaration, this court presumes the regularity of the proceedings. *See State v. Phillips* (1995), 74 Ohio St.3d 72, 92, 656 N.E.2d 643, 663. Presumptions that the court acted without bias and prejudice are not necessary in this case because we have the assurances of the trial court panel. Accordingly we overrule this proposition of law.

85 Ohio St.3d at 137, 707 N.E.2d 476.

The Supreme Court's finding that the record did not disclose bias on the part of the three judge trial panel is a factual finding entitled to the presumption of correctness, as mandated by 28 U.S.C. § 2254(e)(1), as amended by the AEDPA. That provision states that a "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

 State court findings of bias or lack thereof on the part of jurors are entitled to the presumption of correctness. *Wainwright v. Witt*, 469 U.S. 412, 428–29, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (*quoting Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct.

2521, 65 L.Ed.2d 581 (1980)). Though findings of bias or a lack thereof typically are made by a fact-finder, rather than a reviewing court, the finding need not be made at the trial level to be binding under § 2254(e)(1). *See In re Gibbs,* 223 F.3d 308, 312 (5th Cir.2000) (finding re. bias can be made on basis of record; not necessary for judge making such finding to have conducted an evidentiary hearing); *see generally Sumner v. Mata,* 449 U.S. 539, 546, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) (predecessor to § 2254(e)(1) made "no distinction between the factual determinations of a state trial court and those of a state appellate court.").

In view of the Ohio Supreme Court's binding factual determination that the members of the trial panel were not biased, petitioner cannot prevail on his claim of structural error due to any alleged bias on the part of those judges.

■ To the extent that petitioner contends that Ohio's statutory scheme for reweighing contravenes due process, or otherwise was applied in a manner that contravened due process, his contentions are conclusory, and unsupported. As to this and other aspects of this component of his fourth claim, the petitioner has not met his burden of showing that the state court's decisions were contrary to, or an unreasonable application of controlling precedent. He is not, accordingly, entitled to relief on the due process portion of his fourth claim.

### Conclusion

For the foregoing reasons, I find that the petitioner is not entitled to relief, and his petition should be dismissed.

■ It having been my experience with prior capital habeas cases that counsel for the losing party routinely files a motion for reconsideration, and no such motion in other cases yet having been found to have been well-taken, counsel in this case are advised that attorneys in capital habeas corpus cases are not immune from the sanctions that should be and are imposed on counsel who file unfounded motions for reconsideration in other cases. If counsel file an unsuccessful motion for reconsideration in this, as in any case, they shall be required to reimburse the opposing party for the attorneys' fees and expenses incurred in responding to such motions. *See Davie v. Mitchell,* —— F.Supp.3d ——, 2003 WL 22060460 (N.D.Ohio 2003) (No. 1:99CV2400, September 2, 2003). Where counsel filing an unsuccessful motion for reconsideration are otherwise to be compensated under the Criminal Justice Act, said counsel shall not be compensated for the time expended in preparing and filing such motions.

It is, therefore,

ORDERED THAT the petition for a writ of habeas corpus be, and the same hereby is denied.

So ordered.